UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CORA E. CHESSON | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 10-CV-1770 |
| v. | § | |
| | § | |
| JOHN M. McHUGH, SECRETARY OF THE ARMY, ET AL., | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM AND ORDER

Plaintiff Cora Chesson ("Plaintiff") brings this action against Defendants John McHugh, Secretary of the Army, individually and in his official capacity; Captain Jonathan M. Lawson, individually and in his capacity as Captain in the U.S. Army; First Lieutenant Edward Sparling, individually and in his capacity as First Lieutenant in the U.S. Army; and Command Sergeant Major Larry Johnson, individually and in his capacity as Command Sergeant Major in the U.S. Army (collectively "Defendants").

Pending before this Court is Defendants' Motion to Dismiss ("Motion"). (Doc. No. 35). Upon considering Defendants' Motion, the responses thereto, and the applicable law, the Court finds that Defendants' Motion to Dismiss must be **GRANTED**.

I.  BACKGROUND

Plaintiff enlisted in the Army in October 1992, in the Military Occupational Specialty ("MOS") of 92A, Logistical Specialist. (Doc. No. 35 p. 4.) In November 1996,

1

Plaintiff completed her service obligation and was released from active duty into the U.S. Army Reserves ("USAR"). (*Id.*) From November 1996 until October 2003, Plaintiff continued in the USAR. In October 2003, Plaintiff was reassigned to a Logistical Specialist 92A slot at the 366th Military Police ("MP") Company headquarters in Stillwater, Oklahoma. (*Id.* at p. 5.) One of the company's detachments was located in Huntsville, Texas, but had slots allocated only for soldiers in the MOS of 31B, Military Police, not for 92A soldiers, which was Plaintiff's enlistment. But in response to Plaintiff's request to drill closer to her Houston home and her expressed willingness to reclassify from 92A to 31B, Plaintiff was reassigned to drill in Huntsville, Texas. (*Id.*)

Upon her arrival to Huntsville in October 2003, her command secured Plaintiff a spot in two upcoming Basic MP Reclassification courses. (*Id.*) To qualify for the reclassification course, the enrollee must first pass an Army Physical Fitness Test ("APFT"). Plaintiff was disqualified from attending either reclassification course because she failed both APFTs that preceded those courses. (*Id.*) In September 2004, Plaintiff was promoted to Sergeant, and her command again enrolled her in the Basic MP Reclassification course. However, Plaintiff was again disqualified from this course because she failed another APFT. (*Id.*) Between October 2005 and June 2006, Plaintiff took and failed five consecutive APFTs. (*Id.*) In an annual evaluation report in August 2006, Plaintiff's command remarked that her physical fitness "need[ed] improvement". (*Id.*) However, Plaintiff failed the next four consecutive APFTs, with the latest on February 4, 2007. (*Id.* at p. 6.) Two days later, on February 6, 2007, Plaintiff took another APFT without her company command's knowledge. She received a passing score. (*Id.*) One week later, again without her company command's knowledge, Plaintiff reenlisted in

2

the USAR as a 92A Logistical Specialist with a reenlistment cash bonus of $15,000. (*Id.*) On May 5, 2007, Plaintiff again failed an APFT. (*Id.*)

The day after Plaintiff reenlisted, her platoon leader, Lieutenant Edward Sumner, notified her that, because the Huntsville detachment had no 92A slots, and she had reenlisted as a 92A, she could no longer drill at that location as a 92A. (*Id.*) Plaintiff alleges that she thought she could reenlist as a 92A and then reclassify to 31B at a later time, as she had done in October 2003. (Doc. No. 34, *hereinafter* "3rd Amend. Compl.", ¶ 1.) Plaintiff claims that she wanted to reclassify to a 31B soldier, but was advised that she would not be allowed to make this change. (*Id.*) Defendants claim she could not reclassify because she had collected a bonus when she reenlisted as 92A. (Doc. No. 35 p. 8.) Therefore, Defendants gave her three months, until August 1, 2007, to find a unit with MP slots at which to drill. Plaintiff's company commander, Captain Jonathan Lawson, had the unit administrator, Susan Wireman, provide Plaintiff with a list of units with 92A slots in and around the Houston area. (*Id.* at p. 7.) Plaintiff claims that she repeatedly requested to reclassify as a 31B soldier and, at one point, her commanding officer explained that she was being denied because she had been a sergeant since 2004 and had not attended a Warrior Leadership Course ("WLC"), which is a requirement that all soldiers promoted to sergeant must complete within one year of rank. Plaintiff claims she was never scheduled for, assigned to, or given orders for any WLC training. (3rd Amend. Compl. ¶ 4.)

In May 2007, Plaintiff filed a complaint with her brigade Inspector General ("IG") regarding the denial of her reclassification request from 92A MOS to 31B MOS, alleging that she had received "gross differential treatment" from her command due to

her nationality.[1] (*Id.* at ¶ 5.) In June 2007, Plaintiff failed another APFT. That same day, she filed an Equal Opportunity ("EO") complaint. (Doc. No. 35 p. 6.) The EO complaint alleged that her command racially discriminated against her by ordering her to find another unit by August 2007, and by denying her the option to reclassify to 31B. (*Id.* at p. 7.) Major Jerald McAnear was assigned to the EO investigation. (3rd Amend. Compl. ¶ 6.)

In September 2007, Major McAnear completed his investigation and found no evidence that Plaintiff's unit had engaged in unlawful discrimination when it ordered her to find a new drilling unit. (Doc. No. 35 p. 7.) The order also stated that Huntsville did not have any slots for Plaintiff's classification. The only slot in the 366th MP Company available for 92A soldiers was at its headquarters in Stillwater, Oklahoma, which was 438 miles from Plaintiff's then home in Houston. The order stated that this was an unreasonable distance, and Plaintiff should not drill there. (*Id.*) Major McAnear also found that the unit had attempted four times to send Plaintiff to MP Reclassification School, but that her APFT failures had prevented her from attending each of those courses. (*Id.*) He noted concern that, after failing twelve consecutive APFTs, Plaintiff passed an APFT without her company command's knowledge. (*Id.* at p. 8.) Major McAnear also found that the company command was not involved in Plaintiff's reenlistment and thus not responsible for informing her that reenlistment as a 92A could result in her reassignment. (*Id*.) Major McAnear concluded that "[t]he company command had made great effort to accommodate the soldier for several years[.] However when the soldier reenlisted with a bonus for her non-MP MOS, the command had no alternative but to require her to find another unit to which to be assigned." (*Id*. at pp. 7-8.)

---

[1] Plaintiff does not specify her nationality.

4

Plaintiff alleges that she did not receive a copy of the EO investigation until October 2007, after the 7-day period for filing timely appeal had passed. (3rd Amend. Compl. ¶ 6.) She also alleges that the EO findings were based on misrepresentations provided by her command. She asserts that the misrepresentations given by her command are that she was given several opportunities to go to MP MOS School and that the offers were reversed because she had repeatedly failed her APFT; that her command had made several attempts to accommodate her; and that Plaintiff's repeated failures of APFT hampered her ability to advance. (*Id.* at ¶ 7.)

The brigade commander concurred with Major McAnear's EO findings, ruling that Plaintiff's allegations of racial discrimination were unsubstantiated and that a further investigation into her February 6, 2007 APFT and subsequent reenlistment was warranted. (Doc. No. 35 p. 8.) As a result, the brigade commander appointed Major Todd Erskine to conduct the investigation into Plaintiff's February 6, 2007 APFT and subsequent reenlistment. (*Id.* at p. 9.) Major Erskine found no impropriety and recommended that the command take no action. (*Id.* at p. 8.) The Commanding General approved these findings and closed the investigation. (*Id.*) Plaintiff claims she was not provided a copy of Major Erskine's findings. (3rd Amend. Compl. ¶ 9.) Plaintiff claims that she made repeated written requests starting in January 2008 for Major Erskine's decision and for a Right to Sue letter. She requested up the chain of command, from her Commander, to the Command EO Office, and up to Lieutenant Colonel Sam Dunavant, Commander of the 607 MP Battalion, Grand Prairie, Texas. (*Id.* at ¶ 18.) Plaintiff claims that email responses from Major McAnear and Major Erskine became increasingly hostile, including threats by Major McAnear to file charges against her under the

Uniform Code of Military Justice. (*Id.*) She claims she did not receive a copy of Major Erskine's decision until her Freedom of Information Act request was responded to in November 2008. (*Id.* at ¶ 9.)

Plaintiff alleges that Captain Lawson told her not to drill with her company in August 2007 since there was an open EO investigation. (*Id.* at ¶ 10.) However, when Plaintiff did not drill, Captain Lawson began to issue her Code "U's", which mean "unsatisfactory" for unexcused absences. (*Id.*) In July 2007 and in February and March 2008, Plaintiff requested assistance or relief from Congressman Ron Paul. She claims that her superiors made misrepresentations to Congressman Paul, among them that Plaintiff was drilling with 366th MP Company in Rescheduled Training (RST) status; Plaintiff was allowed to RST under the premise that she would change MOS to 31B upon reenlistment; and Plaintiff chose to reenlist as a 92A instead of reclassifying. (*Id.* at ¶ 13.) Plaintiff claims these misrepresentations led Congressman Paul to deny relief to her. (*Id.*)

In October 2007, Plaintiff claims she passed another APFT and requested to attend MP School. (*Id.* at ¶ 16.) However, she claims that Captain Lawson told her she needed to attend WLC School first and the next training would not be available until July 2008. (*Id.*) She also claims that Captain Lawson advised her that the Command Staff Judge Advocate had advised him to reverse the Code "U's" that she was given for not drilling with the unit in August and September 2007, and that she had to be allowed to drill at the Reserve Center in Stillwater, Oklahoma. (*Id.*) Plaintiff began drilling in Stillwater, which was 550 miles from her home in Angleton, Texas. (*Id.* at ¶ 17.)

In March 2008, a new commander took over Plaintiff's unit, First Lieutenant Edward Sparling. (*Id.*) In that same month, the U.S. Army Central Command tasked the

6

90th RSC to provide twenty soldiers in the MOS of 92A to individually mobilize and deploy to Iraq in support of Operation Iraqi Freedom. (Doc. No. 35 p. 9.) In April 2008, Plaintiff alleges that Command Sergeant Major Larry Johnson approached her while she was drilling in Camp Gruber, and asked her to drop her complaints against the United States Army, and said she could be transferred out of the unit if she refused. (3rd Amend. Compl. ¶ 19.) That same day, Plaintiff was selected by the 90th RSC as one of its twenty 92A soldiers to be deployed to Iraq. (Doc. No. 35 p. 10.)

In May 2008, Plaintiff made requests to First Lieutenant Sparling for instructions as to where she should drill pending mobilization to Iraq. She claims she received no response or the response informed her that she was "not part of this unit and not allowed to drill with us." (3rd Amend. Compl. ¶ 20.) However, Plaintiff claims she was given contradicting information. For example, on Thursday, June 19, 2008, First Lieutenant Sparling responded to Plaintiff's request as to instructions on where to drill by stating that she was no longer a member of the unit. (*Id.* at ¶ 22.) That following Monday, June 23, 2008, Plaintiff received a phone call from Sergeant First Class Maynard of the 90th Company asking her if she had drilled that weekend, and stating that First Lieutenant Sparling had been advised that Plaintiff was to be allowed to continue drilling with the 366th MP Company. (*Id.*)

In June 2008, Plaintiff filed a Uniform Code of Military Justice Article 138 complaint, which she claims was ignored. (*Id.* at ¶ 27.) Therefore, she resubmitted the Article 138 complaint in July 2008, which alleged that when she reenlisted as a 92A in February 2007, she was not informed that she would be required to find another drill unit. (Doc. No. 35 p. 10.) She alleged that her chain-of-command withheld this information

7

from her and provided false and misleading information to Major McAnear and to her Congressman. (*Id.*) She also claimed that her command sergeant major had asked her to drop her complaint against the Army, and when she refused his request, she was ordered to deploy to Iraq. (*Id.*) Plaintiff requested that the commander initiate an investigation into her allegations against her unit and permit her to reclassify to Military Police. (*Id.*)

Also in July 2008, Plaintiff received orders mobilizing her in support of Operation Iraqi Freedom, and she subsequently deployed to Iraq. (*Id.*) In September 2008, while Plaintiff was deployed, the Commanding General of USAR reviewed Plaintiff's Article 128 complaint and found her allegations to be without merit. (*Id.*) The Commanding General's action was reviewed by Brigadier General Thomas Ayres, who determined the decision to be proper. (*Id.*) Plaintiff alleges that she did not receive a final ruling from the General Court Martial Convening Authority ("GCMCA") until June 2010. (3rd Amend. Compl. ¶ 27.)

Plaintiff finished her deployment in April 2009 and returned to the United States. (3rd Amend. Compl. ¶ 26.) She claims that she had to wait six months before being assigned to a unit where she could carry out her monthly drill obligations under her reenlistment contract. She was assigned to a 92A slot at the 1002d Quartermaster Company in Beaumont, Texas, less than one hundred miles from Houston, where she was living. (Doc. No. 35 p. 10.)

Plaintiff then brought this suit against Defendant, alleging that she has been subjected to discrimination because of her race, gender, and national origin. In November 2012, the Court granted Defendants' motion to dismiss on all claims but granted Plaintiff leave to amend the Complaint only on the Administrative Procedure Act claim. (Doc. No.

33.) Plaintiff then filed a Third Amended Complaint. Defendant now moves to dismiss the Third Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim.

## II.  LEGAL STANDARD

### A. Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss a case when the plaintiff fails to establish subject matter jurisdiction. A case is properly dismissed under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir. 1998).

### B. Failure to State a Claim

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must contain sufficient factual matter that, if it were accepted as true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim need not give rise to "probability," but need only plead sufficient facts to allow the court "to draw the

9

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A pleading also need not contain detailed factual allegations, but must go beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

While the court must accept well-pleaded facts as true, *Iqbal*, 129 S. Ct. at 1950, it should neither "strain to find inferences favorable to the plaintiffs" nor "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). The court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### III. ANALYSIS

The Court's previous Memorandum and Order found that Plaintiff's APA claim seeking review of the Army Board for Correction of Military Records ("ABCMR") sought to bootstrap a Title VII discrimination claim. (Doc. No. 33.) Therefore, the Court dismissed this bootstrapped Title VII claim because uniformed members of the military are exempt from Title VII. 29 C.F.R. § 1614.103. The Court granted Plaintiff a limited leave to amend her Complaint under the APA. The Court directed Plaintiff that "in re-pleading the APA claim, Plaintiff must distinguish the claim from Title VII." (Doc. No. 33.) If Plaintiff is able to distinguish the claim from Title VII, then Plaintiff may have a right to review pursuant to 10 U.S.C. § 702. But to have this right, Plaintiff's pleadings

must allege that she was "adversely affected" or "aggrieved by agency action." 10 U.S.C. § 702.

Plaintiff's Third Amended Complaint recites the APA cause of action under a new header: "Violation of Due Process; Error in Review of Record and Prior Proceedings." (3rd Amend. Compl. p. 15.) Though under a new heading, Plaintiff's claim looks nearly identical to the claim dismissed in the Second Amended Complaint. Plaintiff requests the Court to "reverse certain unfavorable actions of discrimination, harassment and retaliation". (*Id.*) *Compare* 2nd Amend. Compl. p. 14 ("reverse certain unfavorable actions of discrimination, harassment and retaliation"). The Court is not convinced that this claim is distinguished from a Title VII claim just because Plaintiff goes into more detail about her grievances in the following paragraphs.

Even if Plaintiff could distinguish the APA claim from a Title VII claim, Plaintiff still fails to identify any unfavorable actions that were taken by the agency. Plaintiff cites specific defects of the General Courts Martial Convening Authority ("GCMCA") ruling, but those defects were not of the ABCMR's ruling. The alleged defects in the GCMCA ruling were properly before the ABCMR. *See* 3rd Amend. Compl. p. 14-15 ("The ABCMR certainly had the opportunity to review the complete failure of the GCMCA to consider and properly address Plaintiff's complaints."). The APA allows review of the ABCMR. *Williams v. Wynne*, 533 F.3d 360, 368 (5th Cir. 2008) ("[f]inal decisions made by boards for the correction of military records ... are subject to judicial review under the APA."). The only complaints Plaintiff lodges against the ABCMR ruling is that it "did not address any of Plaintiff's complaints of rights violations or requests for relief." (3rd

11

Amend. Compl. p. 14.) This is vague and fails to meet the pleading standard of showing that Plaintiff was "adversely affected" or "aggrieved by agency action." 10 U.S.C. § 702.

The Court is not satisfied that the APA claim is distinct from a Title VII claim. Furthermore, the Plaintiff has not demonstrated that she has a right to review pursuant to 10 U.S.C. § 702. Specifically, Plaintiff's pleadings have not alleged that she was "adversely affected" or "aggrieved by agency action." 10 U.S.C. § 702.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 35) is **GRANTED**. This case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED**.

**SIGNED** this 22nd day of April, 2013.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE